**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN FELSEN, MATTHEW RAGUSANO, and NAMBARAMEY DY, individually and on behalf of all others situated,<br><br>                Plaintiffs,<br><br>v.<br><br>THE VANGUARD GROUP, INC.,<br><br>                Defendant. | Case No.  2:25-cv-02359-JFM |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**ATLEE HALL, LLP**
Mark C. Atlee (PA No. 204627)
415 North Duke Street
Lancaster, PA 17602
Telephone: (717) 393-9596
Facsimile:  (717) 393-2138
E-mail: mcatlee@atleehall.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie *(pro hac vice* application
forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: aleslie@bursor.com

*Attorneys for Plaintiffs and the Putative Class*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW ................................................................................................. 3

ARGUMENT ...................................................................................................................... 4

I.      PLAINTIFFS HAVE ARTICLE III STANDING ................................................. 4

II.     DEFENDANT IGNORES PLAINITFFS' ALLEGATIONS
        REGARDING THE WEBSITE AND APP ............................................................ 8

III.    DEFENDANT FAILS TO MEET ITS BURDEN OF
        DEMONSTATING NOTICE OF OR ASSENT TO ANY PRIVACY
        POLICY ............................................................................................................... 10

IV.     PLAINTIFFS STATE A CLAIM UNDER THE ECPA ...................................... 11

        A.    Defendant Intercepted Plaintiff's Communications For A Criminal
              Or Tortious Purpose ................................................................................. 11

        B.    Plaintiffs Allege Vanguard Intercepted The "Contents" Of Their
              Communications ....................................................................................... 14

V.      PLAINTIFFS STATE A CLAIM UNDER WESCA .......................................... 15

        A.    The Third Parties Intercepted the "Contents" of Plaintiff Dy's
              Communications with the Website ........................................................... 15

        B.    Plaintiff Dy Did Not Consent To Defendant's Conduct ........................... 16

VI.     DEFENDANT'S CHOICE OF LAW ARGUMENT NECESSARILY
        MEANS IT IS LIABLE UNDER WESCA FOR PLAINTIFFS FELSEN
        AND RAGUSANO .............................................................................................. 16

VII.    PLAINTIFFS STATE A CIPA CLAIM .............................................................. 18

VIII.   PLAINTIFFS STATE A CALIFORNIA INVASION OF PRIVACY
        CLAIM ................................................................................................................ 20

CONCLUSION ................................................................................................................. 21

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Allen v. Midwest Express Care, Inc.*,
  2025 WL 2240253 (N.D. Ill. Aug. 6, 2025) ............................................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 3, 4

*Atkins v. Amplitude, Inc.*,
  2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) ............................................................................. 5

*Baker v. City of Pittsburgh*,
  2025 WL 33637 (W.D. Pa. Jan. 6, 2025) .................................................................................... 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................... 3

*Brown v. Google LLC*,
  525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................................... 11, 12

*Brown v. Google, LLC*,
  685 F. Supp. 3d 909 (N.D. Cal. 2023) ......................................................................... 14, 15, 19

*Caraffa v. TD Bank, N.A.*,
  2025 WL 2319668 (E.D. Pa. Aug. 12, 2025) ............................................................................. 1

*Castillo v. Costco Wholesale Corp.*,
  2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ................................................................ 12, 13

*Chabolla v. ClassPass Inc.*,
  129 F.4th 1147 (9th Cir. 2025) ................................................................................................. 10

*Chilutti v. Uber Techs., Inc.*,
  2023 PA Super 126, 300 A.3d 430 (2023) ............................................................................. 3, 10

*Cook v. GameStop, Inc.*,
  689 F. Supp. 3d 58 (W.D. Pa. Aug. 28, 2023) ........................................................................... 8

*Dep't of Justice v. Reporters Committee for Freedom of Press*,
  489 U.S. 749 (1989) ................................................................................................................... 18

*Doe v. Tenet Healthcare Corp.*,
  2025 WL 1635956 (E.D. Cal. June 9, 2025) ............................................................................... 8

*Doe, v. Call-On Doc, Inc.*,
  2025 WL 1677632 (S.D. Cal. June 13, 2025) .................................................................... 1, 9, 20

*Forman v. Davis*,
  371 U.S. 178 (1962) ................................................................................................................... 21

*Frasco v. Flo Health, Inc.*,
  349 F.R.D. 557 (N.D. Cal. 2025) ..................................................................................... 1, 5, 18

*Gabrielli v. Motorola Mobility LLC*,
  2025 WL 1939957 (N.D. Cal. July 14, 2025) .......................................................................... 21

*Greenley v. Kochava, Inc.*,
  684 F. Supp. 3d 1024 (S.D. Cal. 2023) ................................................................................... 19

*Hogan v. Amazon.com, Inc.*,
  2022 WL 952763 (N.D. Ill. Mar. 30, 2022) ........................................................................... 18

*Hughes v. Vivant, Inc.*,
  2024 WL 5179916 (C.D. Cal. July 12, 2024) ............................................................................. 6

*In re BPS Direct, LLC,*
   705 F. Supp. 3d 333 (E.D. Pa. 2023) .................................................................. 8
*In re Facebook Biometric Info. Priv. Litig.,*
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ......................................................... 17, 18
*In re Facebook, Inc. Internet Tracking Litig.,*
   956 F.3d 589 (9th Cir. 2020) ............................................................... passim
*In re Google RTB Consumer Priv. Litig.,*
   606 F. Supp. 3d 935 (N.D. Cal. June 13, 2022) ...................................................... 15
*In re Nickelodeon Consumer Priv. Litig.,*
   827 F.3d 262 (3d Cir. 2016) ............................................................... 2, 6, 7
*In re: Google Inc. Cookie Placement Consumer Priv. Litig.,*
   934 F.3d 316 (3d Cir. 2019) .................................................................. 4, 6
*Ingrao v. AddShoppers, Inc.,*
   2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ......................................................... 8
*James v. Walt Disney Co.,*
   701 F. Supp. 3d 942 (N.D. Cal. 2023) ............................................................. 19
*Jones v. Ford Motor Co.,*
   85 F.4th 570 (9th Cir. 2023) ..................................................................... 18
*Katz-Lacabe v. Oracle America, Inc.,*
   668 F. Supp. 3d 928 (N.D. Cal. Apr. 6, 2023) ...................................................... 21
*Kreider v. Green Robin Homes, LLC,*
   2025 WL 1582461 (E.D. Pa. June 4, 2025) ........................................................ 3, 17
*Marden v. LMND Med. Grp., Inc.,*
   2024 WL 4448684 (N.D. Cal. July 3, 2024) .......................................................... 12
*Murphy v. Thomas Jefferson University Hosp., Inc.,*
   2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ....................................................... 9, 13
*Nguyen v. Barnes & Noble, Inc.,*
   763 F.3d 1171 (9th Cir. 2014) ..................................................................... 10
*Oliver v. Noom, Inc.,*
   2023 WL 8600576 (W.D. Wash. Aug. 22, 2023) ....................................................... 11
*Patterson v. Respondus, Inc.,*
   593 F. Supp. 3d 783 (N.D. Ill. 2022) .......................................................... 17, 18
*Petris v. Sportsman's Warehouse, Inc.,*
   736 F. Supp. 3d 260 (W.D. Pa. 2024) ............................................................... 5
*Popa v. Harriet Carter Gifts, Inc.,*
   772 F. Supp. 3d 592 (W.D. Pa. Mar. 24, 2025) ..................................................... 11
*R.C. v. Walgreen Co.,*
   733 F. Supp. 3d 876 (C.D. Cal. 2024) ............................................................. 14
*Ribas v. Clark,*
   38 Cal. 3d 355 (1985) ......................................................................... 17, 18
*Riganian v. LiveRamp Holdings, Inc.,*
   2025 WL 2021802 (N.D. Cal. July 18, 2025) ........................................................ 13
*Santoro v. Tower Health,*
   2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) .......................................................... 9
*Shah v. Capital One Financial Corp.,*
   768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..................................................... 1, 2, 13, 14

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ....................................................................................... 3
*Smith v. Rack Room Shoes, Inc.*,
   2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ................................................ 15
*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ....................................................................................... 4
*St. Aubin v. Carbon Health Techs., Inc.*,
   2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ............................................ 9, 20
*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) ......................................................................................... 3
*Stein v. Edward-Elmhurst Health*,
   2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ................................................. 11
*Stevens v. TD Bank, N.A.*,
   2025 WL 1779164 (D.N.J. June 27, 2025) ..................................................... 9
*Strehl v. Guitar Center, Inc.*,
   2023 WL 9700041 (C.D. Cal. Nov. 3, 2023) ............................................... 10
*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ....................................................................................... 4
*In re Facebook, Inc., Cons. Privacy User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................ 21
*Yockey v. Salesforce, Inc.*,
   688 F. Supp. 3d 962 (N.D. Cal. 2023) ........................................................... 5

**Statutes**

18 U.S.C. §§ 2510-2522 ........................................................................................ 5
Cal. Penal Code § 630 .......................................................................................... 17

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 3
Federal Rule of Civil Procedure 12(b)(6) ......................................................... 3, 4
Rule 12(b)(1) of the Federal Rules of Civil Procedure ........................................ 3

**Other Authorities**

Restatement (Second) of Conflict of Laws § 187 ............................................... 17

## INTRODUCTION

Defendant the Vanguard Group, Inc.'s ("Defendant") Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 13) (the "Motion" or MTD") seeks to obfuscate the clear facts of a wiretapping case involving the same technology that courts routinely find violates the ECPA, WESCA, and CIPA. *See, e.g., Caraffa v. TD Bank, N.A.*, 2025 WL 2319668 (E.D. Pa. Aug. 12, 2025); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025); *Doe, v. Call-On Doc, Inc.*, 2025 WL 1677632 (S.D. Cal. June 13, 2025); *Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025).

Plaintiffs allege that "Defendant operates an investment service through which consumers can manage brokerage, educational savings, or personal or workplace retirement accounts. To create an account, consumers must share personally identifying information, including their name and email address. Consumers can then purchase stocks and other investment products through their account. When users disclose such sensitive information to access these services, data privacy is paramount to maintaining consumer trust." First Amended Complaint ¶ 2 (ECF No. 12) (the "FAC"). Defendant violated that trust, and the law, when it embedded tracking technologies owned by LinkedIn, Meta, and Google on to its Website and App, and assisted them in intercepting Plaintiffs' and Class Members' confidential communications with the Website and App— including searches within the account portal and protected information about which financial products they purchased. *Id*. ¶¶ 87-89. These interceptions are consistent with the descriptions of the technology at issue, which are designed to intercept detailed URLs that contain such information. *Id*. ¶¶ 27-79. Each Plaintiff alleges they logged into a Vanguard account, searched for financial products, and purchased financial products on the Website and App, and therefore had their own confidential communications intercepted. *Id*. ¶¶ 6-8. Each Third Party collected sufficient information to identify the user and added the intercepted information to its respective

1

data profile to target the user with advertising. *Id*. ¶¶ 93-107[1]. "This [information] is valuable to Defendant because it improves the effectiveness of Defendant's advertisements, allows for the targeting of users, and provides performance information for ad campaigns." *Id*. ¶ 105. "Thus, Defendant's disclosure of consumer information is done for the purpose of improperly increasing its own advertising efficiency," as well as that of the Third Parties. *Id*. ¶ 107.

Ignoring these allegations, Defendant contends that Plaintiffs have not stated any viable claims. Each of Defendant's arguments fail. First, Plaintiffs, like plaintiffs in numerous other internet wiretapping cases, have standing to bring their claims. Defendant's conduct here—disclosing its customers' private financial information—violates a historically protected privacy interest. Plaintiffs reasonably believed this information was private, and the information intercepted by the Third Parties is the type "of information that, in Congress's judgment, ought to remain private," as evidenced by the Graham-Leach-Bliley Act. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016). This is especially true here, where the interceptions run counter to Defendant's representations and LinkedIn's representations that Plaintiffs' private financial information would not be unlawfully shared.

Defendant's attempts to dismiss Plaintiffs' wiretapping claims fare no better. Defendant's conduct triggers the crime-tort exception for the ECPA. *Shah*, 768 F. Supp. 3d at 1033. Further, for all three wiretapping statutes, the information intercepted constitutes the "contents" of Plaintiffs' communications with the Website and App. Defendant then seeks to leave its California customers without remedy by simultaneously arguing that only WESCA can apply and that WESCA does not apply because the communications were made in California. Both cannot be

---

[1] Plaintiffs have each maintained active accounts with Facebook, LinkedIn, and Google at all relevant times. *See* Declaration of Brian Felsen ¶¶ 3-5; Declaration of Nambaramey Dy ¶¶ 3-5.

true, as Pennsylvania law does not permit such a result. *Kreider v. Green Robin Homes, LLC*, 2025 WL 1582461, at *14 (E.D. Pa. June 4, 2025).

Furthermore, Defendant's consent argument fails, as it merely describes (but does not provide evidence of) a "browsewrap" agreement, which courts consistently find to be unenforceable. *Chilutti v. Uber Techs., Inc.*, 2023 PA Super 126, 300 A.3d 430, 444 (2023), *appeal granted*, 325 A.3d 446 (Pa. 2024).

Finally, Plaintiffs state a claim under the California Constitution because Defendant's representations give rise to a reasonable expectation of privacy, which was violated.

For the following reasons, Defendant's Motion should be denied.

## <u>STANDARD OF REVIEW</u>

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure tests a district court's subject matter jurisdiction. When a party attacks the subject matter jurisdiction of the court under Rule 12(b)(1), the court generally must first determine that it has jurisdiction as a threshold matter. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state

a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678.

**ARGUMENT**

## I.    PLAINTIFFS HAVE ARTICLE III STANDING

Defendant argues "Plaintiffs have not met their burden to establish standing because they fail to articulate any sufficiently concrete, particularized, or actual injury arising from Vanguard's alleged conduct." MTD at 8. Defendant is incorrect.

To establish standing, "a plaintiff must show that (i) [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 424 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016).  As the Third Circuit explained, "[h]istory and tradition reinforce that a concrete injury for standing purposes occurs when [LinkedIn, Meta,] Google, or any other third party, tracks a person's internet browser activity without authorization." *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("Violations of the right to privacy have long been actionable at common law.").  "In an era when millions of Americans conduct their affairs increasingly through electronic devices, [Defendant's] assertion…that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data is untenable." *In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 934 F.3d at 325.

4

For this reason, federal courts ruling on ECPA, CIPA and WESCA claims routinely find plaintiffs have standing to bring such claims in federal court. *See, e.g., Petris v. Sportsman's Warehouse, Inc.,* 736 F. Supp. 3d 260, 270 (W.D. Pa. 2024) ("Originally ingrained into the common law, the right to privacy as to wiretapping has largely been supplanted by federal and state statutes, like the Federal Wiretap Act, 18 U.S.C. §§ 2510-2522, and its state analog, WESCA. Like the common law, WESCA protects the privacy rights of individuals."); *Baker v. City of Pittsburgh*, 2025 WL 33637, at *4 (W.D. Pa. Jan. 6, 2025) ("The common law tort of intrusion upon seclusion, the federal Wiretap Act, and WESCA address the same underlying interest: keeping one's private conversations private."); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969 (N.D. Cal. 2023) ("Statutes such as CIPA and WESCA thus 'codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'"); *Flo Health, Inc.*, 349 F.R.D. 557, 580 (N.D. Cal. 2025) ("Put in terms of standing, the loss of control over one's personal information is the "concrete" harm, whether from stealing access to a personal diary in 1916 or obtaining user information in a healthcare app in 2016. In each case, a person has lost control over her private information because of another's intentional actions."); *Atkins v. Amplitude, Inc.*, 2025 WL 2521732, at *1 (N.D. Cal. Sept. 2, 2025) ("Disclosure of facts that allegedly reveal this highly sensitive information is sufficient to allege a concrete privacy harm analogous to those actionable under common law privacy torts.").

Here, Plaintiffs each allege that they "regularly log[] into [their Vanguard] account and search[] for and purchase investments." FAC ¶¶ 6-8. Plaintiffs also each provide the date on which their accounts were created and the duration of their use of their accounts with Defendant. *Id.* Plaintiffs further allege that, "[d]espite reasonable expectations of privacy and Defendant's legal duties to prevent the disclosure of such private information, Defendant disclosed and assisted

the Third Parties in intentionally intercepting confidential information from Defendant's Website and App for target advertising purposes and to increase their own revenue. These disclosures include communications that contain sensitive and confidential information," including information about each financial product purchased on the website or App. *Id.* ¶ 5; *see also id.* ¶ 97 ("Defendant's disclosure of consumer information is done for the purpose of improperly increasing its own advertising efficiency, as well as LinkedIn's [, Meta's, and Google's]."). These pleadings go beyond the vague allegations in the authority relied upon by Defendant. *See Hughes v. Vivant, Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) ("Plaintiff does not allege any of the basic facts concerning her interaction with the Website, including when she visited it and what occurred during her visit.").

This is enough to confer standing on its own, but Defendant's conduct was even more invasive because the third parties "tracked their personal internet browsing information in violation [of Defendant's and the third parties'] own promises not to do so." *In re: Google Inc.* 934 F.3d at 325; *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 269 (3d Cir. 2016) (finding a concrete injury occurred when a website operator stated it would not collect the personal information of children visiting Nick.com but did so anyway). Here, both Defendant and LinkedIn ensure consumers that the sensitive financial information input into the Website and the app would not be unlawfully collected. FAC ¶ 2 ("On the account creation pages, Vanguard represents that '[t]his application is secure.' Indeed, users would not disclose such information if they suspected that it was not being safeguarded."); *id.* ¶ 5 ("Despite reasonable expectations of privacy and Defendant's legal duties to prevent the disclosure of such private information, Defendant disclosed and assisted the Third Parties in intentionally intercepting confidential information from Defendant's Website and App[.]"); *id.* ¶¶ 45-46 ("LinkedIn offers an express representation: "We

6

will only collect and process personal data about you where we have lawful bases.' Despite this explicit representation, LinkedIn intentionally intercepts and receives sensitive information in violation of state and federal privacy laws due to the value of the data.").

What is more, "Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private." *In re Nickelodeon*, 827 F.3d at 274. Congress, through the Graham-Leach-Bliley Act, has made clear financial information of the type disclosed here is information it deems private and provides Plaintiffs with the right to seek redress. FAC ¶¶ 17-19 (Examples of "nonpublic personal information" Congress intended to be kept confidential under the GLBA, including "any information [a] consumer provides to [a financial institution] to obtain a financial product or service from [a financial institution]," and "[t]he fact that an individual is or has been one of [a financial institution's] customers or has obtained a financial product or service from [a financial institution]," and "[a]ny information [a financial institution] collect[s] through an Internet "cookie" (an information collecting device from a web server").");  *id.* ¶¶ 25-26 ("Plaintiffs' and Class Members' "nonpublic personal information" is confidential under both federal and California law. Nonetheless, such information was intercepted in transit by each Third Party—as enabled by Defendant—and neither Defendant nor the Third Parties procured Plaintiffs' and Class Members' consent prior to this interception. This pattern of conduct by Defendant flouts the GLBA's and CalFIPA's respective purposes of enhancing 'financial privacy[.]'");  *id.* ¶ 87 ("LinkedIn and Google intercept each stage of a user's selection of Domestic Stock for investment, the ticker name, and the action the user is taking with this investment.");  *id.* ¶ 89 ("Additionally, every search query a user enters into Defendant's Website and App collected and transmitted to LinkedIn and Google.");  *id.* ¶ 90 ("Each purchase, search, or communication with Defendant's Website or App

is linked to an individual using the cookies and other identifying information[].").

Defendant's reliance on *In re BPS Direct*, is therefore misplaced, as Plaintiffs here do allege the unlawful interception and disclosure of sensitive and confidential financial information. *See In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 355 (E.D. Pa. 2023) (finding that "Users who did not disclose highly sensitive personal information such as…financial data from banks or credit cards cannot establish concrete harm."); *see also Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *8 (E.D. Pa. Nov. 25, 2024) (finding that the plaintiffs lacked standing because "neither internet browsing activity nor email addresses qualify as private or personal information."); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 63-64 (W.D. Pa. Aug. 28, 2023) (same).

Put simply, Plaintiffs "each allege facts showing they used Defendants' Web Properties, submitted personal information, and Defendants invaded their privacy rights by disclosing their information to third parties without consent using tracking technology embedded on Defendants' Web Properties.  At the pleading stage, Plaintiffs allegations are sufficient to establish standing." *Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956, at *11 (E.D. Cal. June 9, 2025).

## II.    DEFENDANT IGNORES PLAINITFFS' ALLEGATIONS REGARDING THE WEBSITE AND APP

Defendant claims the FAC "is devoid of any facts specific to Plaintiffs' alleged experiences or what actually occurred during Plaintiffs' visits to Vanguard's website and app."  MTD at 9.  This is a misreading of Plaintiffs' allegations.  The FAC describes in detail the way each of the tracking technologies intercepts information input into Defendant's Website and App, in real time, including the specific searches and financial products purchased by the user, and collects information like cookie values and email addresses, sufficient to identify each user.  FAC ¶¶ 27-92.  The FAC then alleges that each plaintiff searched for information and purchased financial products on the Website and App, including the most recent date each plaintiff purchased a

financial product, and alleges that each Plaintiffs' communications were intercepted in a manner consistent with the description of the technology. *Id.* ¶¶ 6-8, 110, 134, 160.  Notably, the tracking technologies from LinkedIn, Facebook, and Google, operate in the same manner, regardless of which specific stock is being traded by the Vanguard user.  This is sufficient factual detail at the pleadings stage. *See Murphy v. Thomas Jefferson University Hosp., Inc.*, 2024 WL 4350328, at *4 (E.D. Pa. Sept. 30, 2024) (finding allegations that "Defendant transmitted Plaintiffs' communications relating to appointments with medical providers, relating to specific healthcare providers, conditions, treatments, diagnoses, prognoses, prescription drugs, symptoms, insurance, and payment information, as well as messages exchanged in patient portals" was sufficient to meet federal pleading standards); *Call-On Doc, Inc*., 2025 WL 1677632, at *3-4 (Finding Article III standing and sustaining wiretapping claims where the complaint contained a description of the way Google Analytics operated on the defendant's website and then alleged that the plaintiff took the actions generally described earlier in the complaint); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024) (Denying motion to dismiss where "Plaintiff provides examples of how her searches and appointment bookings create descriptive URLs" and then alleged that Meta intercepted URLs from the website).

Plaintiffs' FAC goes beyond the vague allegations in the authority relied upon by Defendant.  FAC ¶¶ 27-92; *see also Stevens v. TD Bank, N.A.*, 2025 WL 1779164, at *5 (D.N.J. June 27, 2025) (finding allegations of a "hypothetical visitor to TD's website do not suffice.") (internal quotations omitted); *Santoro v. Tower Health*, 2024 WL 1773371, at *4 (E.D. Pa. Apr. 24, 2024) (pleadings insufficient because the court could not "determine what information [plaintiff] actually communicated to [defendant] via his web browsing and thus cannot tell whether that information might be covered by HIPAA.").

III.    **DEFENDANT FAILS TO MEET ITS BURDEN OF DEMONSTATING NOTICE OF OR ASSENT TO ANY PRIVACY POLICY**

Defendant argues multiple times that Plaintiffs consented to Defendant's conduct because the Privacy Policy "was linked at the bottom of every page of Vanguard's website."  MTD at 17. Defendant provides no evidence for what any webpage page looked like at the time Plaintiffs visited, and Defendant makes no argument that it provided reasonably conspicuous notice of the Privacy Policy, let alone informed users that they were agreeing to any conduct.   That is intentional.

Defendant is describing "browsewrap" text, "in which a website offers terms that are disclosed only through a hyperlink, and the user supposedly manifests assent to [the] terms simply by continuing to use the website."  *Chilutti v. Uber Techs., Inc.*, 2023 PA Super 126, 300 A.3d 430, 444 (2023), *appeal granted*, 325 A.3d 446 (Pa. 2024). "Courts consistently decline to enforce browsewraps."  *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025); *see also Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) ("Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement"); *Strehl v. Guitar Center, Inc.*, 2023 WL 9700041, at *6 (C.D. Cal. Nov. 3, 2023) (finding hyperlink inconspicuous where hyperlink was "located at the bottom of the screen, where it is reasonable likely that it would not be visible to the user unless the user scrolled down or zoomed out"); *Chilutti*, 300 A.3d at 447 ("Based on the nature of the Uber's two interfaces, it is clear the contracts qualify as browsewrap agreements because both Appellants were left unaware that contractual terms were even offered, much less that continued use of the website would be deemed to manifest acceptance of those terms.") (cleaned up); *Oliver v. Noom, Inc.*, 2023 WL 8600576, at *9 (W.D.

Wash. Aug. 22, 2023) (hyperlink not binding where it was "buried at the very bottom of the website in tiny, non-contrasting font that is unobtrusive and easy to overlook") (cleaned up).

Here, Defendant has provided no evidence that the purported policy was even on the webpages, let alone in a conspicuous manner where users would manifest their assent to the Policy.[2]

## IV.    PLAINTIFFS STATE A CLAIM UNDER THE ECPA

### A.    Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose

Defendant argues that "[b]ecause Vanguard necessarily was a party to any purported communications on its own website, it cannot be subject to liability under the ECPA."  MTD at 13.  That is wrong.

For an ECPA claim, "consent is not a defense where the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."  *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (cleaned up).  "Under this exception, Plaintiffs must allege that either the 'primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously.'" *Id*.[3]

---

[2] The main authority relied upon by Defendant was based on a summary judgment order that the terms at issue were "reasonably conspicuous," where the court had the benefit of a fully developed factual record.  No such evidence is before the Court at this stage.  *See, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592, 606 (W.D. Pa. Mar. 24, 2025).

[3] Some courts have rejected this notion altogether, finding that only the act must be tortious, not the intent. See *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *5–6 (N.D. Ill. Feb. 21, 2025) ("That approach seems difficult to square with the statutory text. … The text points to the 'purpose of committing any criminal or tortious *act*.'… A person can have a purpose of committing an act that is criminal or tortious, without having a criminal or tortious purpose…The other reading would, in effect, import a *mens rea* element into the statute. Congress could have required a showing that the person acted with a criminal or tortious purpose. The text could have covered intercepting a communication 'for a criminal or tortious purpose.' Or the statute could have applied

The FAC clearly sets forth the crimes and torts committed against Plaintiffs, including violations of CIPA, WESCA, the California Constitution, the GLBA and intrusion upon seclusion. FAC ¶¶ 25-26, 85-92, 144-186. Further, additional privacy violations occurred after the interception, when the data collected was assembled into profiles by the Third Parties and used to target Plaintiffs with advertising, which "is done for the purpose of improperly increasing its own advertising efficiency, as well as Google's [LinkedIn's, and Meta's]." FAC ¶ 102; *see also id*. ¶¶ 93-101.

Defendant focuses only on allegations as to the act of interception, arguing Plaintiffs fail to plausibly allege that their communications were "for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." MTD at 13 (emphasis in original). But "[t]he Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose." *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024).

As such, numerous courts have found "tortious intent sufficiently pled where [as here] 'Plaintiffs have alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles' [,] that this 'association of their data with preexisting user profiles [allegedly] violated state law,'" and that third parties "benefited from this interception by using the information to sell ads to other third-party advertisers." *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (quoting *Brown*, 525 F. Supp. 3d at 1067); *see also Murphy*, 2024 WL 4350328, at *4 ("The Third Circuit has held that

---

to intercepting a communication 'for a criminal or tortious purpose to commit a criminal or tortious act.' But that's not what the text says. The 'act' must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious.").

in order to invoke the crime-tort exception of the ECPA a plaintiff must plead an intended tortious or criminal use of the acquired information. Plaintiffs allege that Defendant intercepted Plaintiffs' IIHI for the intended use of disclosing the information to Meta, which is a HIPAA violation and therefore prohibited by federal law."); *Allen v. Midwest Express Care, Inc.*, 2025 WL 2240253, at *3 (N.D. Ill. Aug. 6, 2025) ("Defendant argues that the Crime-Tort Exception does not apply because the criminal or tortious act is not separate and distinct from the alleged wiretap….Plaintiff properly alleges that Defendant intentionally violated HIPAA when it allowed Plaintiff's IIHI to be intercepted, disclosed, viewed, analyzed, and used by third parties, which is distinct from the improper interception in the ECPA claim."); *Castillo*, 2024 WL 4785136, at *5 ("Plaintiffs allege that Costco not only intercepted their data, but also used their data to generate targeted advertisements for financial gain."); *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, at *9-10 (N.D. Cal. July 18, 2025).

   *Shah* is instructive. There, as here, the Defendant was a financial services company that installed trackers (including the trackers from Google and Meta at issue here) on its website that intercepted information about its customer's financial transactions. *Shah*, 768 F. Supp. 3d at 1041. The court denied the defendant's motion to dismiss the plaintiffs' ECPA claim, finding:

> Plaintiffs do allege in the complaint that Defendant intercepted Plaintiffs' electronic communications. However, Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts. Because Defendant's actions are allegedly tortious, the one-party exemption does not apply.
>
> Another reason that the one-party exemption does not apply is because the issue of whether Plaintiffs consented to Defendant's conduct is at the center of the dispute. Because consent is a factual determination, it cannot be determined on the pleadings… Therefore, Plaintiffs state a claim as to the ECPA.

*Id*. at 1053 (internal citations omitted).

Plaintiffs' allegations here are stronger than those in *Shah* because, in addition to allegations of the use of Plaintiffs' and Class Members' information for advertising (FAC ¶¶ 48-50, 62-63, 75, 93-102), the FAC details how Defendant violated the GLBA, a federal law that protects financial information (*id*. ¶¶ 5, 26, 109, 139).  Such allegations go beyond the pleadings in the authority relied upon by Defendant, as discussed, *supra*.

**B.      Plaintiffs Allege Vanguard Intercepted The "Contents" Of Their Communications**

Defendant next argues "Plaintiffs also fail to plead facts showing that the 'contents' of any of their communications were disclosed to third parties[.]" MTD at 15.  That is wrong.

Under the ECPA, WESCA, and CIPA, "[c]ontent is defined to 'include[ ] any information concerning the substance, purport, or meaning of [the] communication.'"  *Brown v. Google, LLC*, 685 F. Supp. 3d 909, 935 (N.D. Cal. 2023).  This includes "the links, pages, and tabs users click and view and the search terms they employ," including those contained in URLs.  *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA and ECPA.").

Contrary to Defendant's contention, Plaintiffs allege they communicated with the Website and App via inputting search terms and selecting financial products to purchase.  FAC ¶¶ 6 ("Plaintiff Felsen regularly logs into his account and searches for and purchases investments on the Website while in California, including as recently as April 2025), 7-8 (Same for Plaintiffs Ragusano and Dy). The FAC also contains detailed allegations about the functionality of the Trackers, which includes descriptions of what information is passed when a user logs into their account, searches the Website or App, and purchases financial products on the Website or App. *Id*. ¶¶ 85-86 (Account type selection intercepted by Meta); *id*. ¶ 87 ("LinkedIn and Google

intercept each stage of a user's selection of Domestic Stock for investment, the ticker name, and the action the user is taking with this investment."); *id.* ¶ 89 ("[E]very search query a user enters into Defendant's Website and App collected and transmitted to LinkedIn and Google.").

In other words, Plaintiffs allege that the Third Parties collect detailed URLs (which are content) and use it to create comprehensive profiles. Because these "detailed URLs reflect[] users' queries," they constitute content. *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. June 13, 2022) (finding under the Electronic Communications Privacy Act that "referrer URL that caused navigation to the current page," details about "the publisher object of the site or app," and "the content within the site or app" all were "content"); *Brown*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" are content).

## V.    PLAINITFFS STATE A CLAIM UNDER WESCA

Defendant argues only that Plaintiff Dy did not state a claim under WESCA.[4] MTD at 16-17. This is wrong.

### A.    The Third Parties Intercepted the "Contents" of Plaintiff Dy's Communications with the Website

As described above, Plaintiffs clearly allege that the contents of their communications were intercepted. Argument § IV.B, *supra*. Plaintiff Dy alleges he "has held an investment account with Defendant since 2018" and "regularly logs into his account and searches for and purchases investments on the Website and App while in Pennsylvania, including as recently as June 2025." FAC ¶ 8. Each of these actions—(1) Account type selection, (2) Search terms and (3) financial product selections—constitute content under WESCA. Further, the FAC describes how the Third

---

[4] Plaintiff Felsen's name in paragraph 8 of the FAC was a scrivener's error. Plaintiff Dy was in Pennsylvania when he logged into his account and searched for and purchased investments on Defendant's Website and App. Declaration of Nambaramey Dy ¶ 5.

Parties' Trackers intercept each of those pieces of information as they are entered into the Website and App. *Id.* ¶¶ 80-92. This is sufficient at the pleading stage.

### B.  Plaintiff Dy Did Not Consent To Defendant's Conduct

As discussed above, Defendant did not provide sufficient notice of the Privacy Policy. Argument § II, *supra*.  Further, the FAC alleges "Plaintiffs never consented, agreed, authorized, or otherwise permitted LinkedIn [Google and Meta] to intercept their confidential personal and financial information."  FAC ¶ 51.  As such, Defendant's consent argument fails here as well.

## VI.  DEFENDANT'S CHOICE OF LAW ARGUMENT NECESSARILY MEANS IT IS LIABLE UNDER WESCA FOR PLAINTIFFS FELSEN AND RAGUSANO

Defendant makes two contradictory arguments in its motion regarding whether CIPA or WESCA should control with respect to Plaintiffs Felsen and Ragusano.  First, Defendant argues that WESCA must control because its Terms of Use contains a Pennsylvania choice of law provision and "no actual conflict exists between CIPA and WESCA."[5]  MTD at 20.  But in a footnote, Defendant also says "To state a WESCA claim, a plaintiff must also allege that their communications were intercepted in Pennsylvania. In their original complaint, Plaintiffs failed to allege that any communications were intercepted in Pennsylvania." MTD at 16, n 6. Defendant cannot have it both ways. Either no conflict exists and Plaintiffs Felsen and Ragusano can state WESCA claims, or WESCA prohibits claims from plaintiffs whose communications were intercepted in California and, therefore, dismissing CIPA claims in favor of WESCA deprives California citizens of a remedy guaranteed to them by statute.[6]

---

[5] Plaintiffs did not consent to Defendant's Terms of Use or Privacy Policy, as described above. Plaintiffs include Defendant's Terms in the FAC to demonstrate that Defendant consented to the nationwide application of WESCA. Further, Plaintiffs did not file in this District based on the choice of law provision, but rather, because there is general jurisdiction over Defendant.

[6] Should this Court find that WESCA applies to the Nationwide Class, Plaintiffs request leave to amend to allege WESCA claims on behalf of the Nationwide Class.

Under Pennsylvania law, the "Court may refuse to apply the chosen law 'to protect a fundamental policy' of the state that would govern in the absence of a choice of law provision, if that state 'has a materially greater interest than the state of the chosen law in the determination of the particular issue.'" *Kreider v. Green Robin Homes, LLC*, 2025 WL 1582461, at *14 (E.D. Pa. June 4, 2025) (quoting Restatement (Second) of Conflict of Laws § 187). CIPA undoubtedly embodies a fundamental policy. "In enacting this [CIPA], the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.'" *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) (quoting Cal. Penal Code § 630). But if WESCA were to govern this dispute, and Defendant is correct that Plaintiff Felsen's and Plaintiff Ragusano's claims cannot be brought because they do not invest while in Pennsylvania, that fundamental interest would be thwarted. Such application of Pennsylvania law would leave Plaintiffs Felsen and Ragusano and California Class Members (who are all California citizens) without a remedy for Defendants' violations of their privacy.

Under these circumstances, the Pennsylvania choice of law clause cannot be enforced, and application of California law is proper. *See, e.g.*, *Kreider, LLC*, 2025 WL 1582461, at *14 (declining to enforce a choice of law provision under Pennsylvania choice of law rules, noting that "regard must also be had for state interest and for state regulation"); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1170 (N.D. Cal. 2016) (declining to enforce California choice of law clause where "Illinois will suffer a complete negation of its biometric privacy protections for its citizens if California law is applied"); *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 812 (N.D. Ill. 2022) (declining to enforce Washington choice of law clause where doing

so "would thus thwart Plaintiffs' individual right to assert biometric-privacy claims"); *Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at \*4 (N.D. Ill. Mar. 30, 2022) (same).[7]

## VII.    PLAINTIFFS STATE A CIPA CLAIM

Defendant advanced several incorrect arguments in a half-hearted attempt to dismiss Plaintiffs' CIPA claims. All are without merit.

First, Plaintiffs have statutory standing to pursue CIPA claims. As the California Supreme Court has explained, the purpose of wiretapping statutes like the CIPA is to protect the right of an individual "to control the nature and extent of the firsthand dissemination of his statements." *Ribas v. Clark* 38 Cal. 3d 355, 360-61 (1985). In other words, the substantive privacy interest the CIPA protects is a person's right to "control [] information concerning his or her person." *In re Facebook Inc. Internet Tracking Litig.* 956 F.3d 589, 596 (9th Cir. 2020). This privacy interest has been historically recognized by "both the common law and the literal understandings of privacy." *Dep't of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 763 (1989); *Frasco v. Flo Health, Inc.*, 2025 WL 1433825, at \*12 (N.D. Cal. May 19, 2025) ("[T]he harm made actionable at common law was an individual's loss of control over her private affairs or concerns by an interloper's tortious intentional interference.") (cleaned up). Consequently, "obtaining user information" "is the 'concrete harm," as the user "has lost control over her private information because of another's intentional actions." *Frasco*, 2025 WL 1433825 at \*12. Accordingly, appellate courts have found the violation of a wiretapping statute confers standing. *Jones v. Ford Motor Co.* 85 F.4th 570, 574 (9th Cir. 2023).

---

[7] Notably, the choice of law clauses in *In re Facebook* and *Patterson* included language that the clause's chosen law should be applied "without regard to conflict of law provisions." *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d at 1164; *see also Patterson*, 593 F. Supp. 3d at 807 n.11. Nonetheless, both courts declined to enforce the chosen law.

Plaintiffs have every right to control who gets to know their interactions with Vanguard, and in particular, the private investment decisions they make. *James v. Walt Disney Co.* 701 F. Supp. 3d 942, 950 (N.D. Cal. 2023) (finding Article III standing based on interception of "specific web pages viewed, search terms entered, and purchase behavior"); *Brown v. Google LLC* 685 F. Supp. 3d 909, 941(N.D. Cal. 2023) ("[U]sers [have a reasonable expectation of privacy] over URLs that disclose either unique search terms or the particular document within a website that a person views."). And Plaintiffs have the right to control who gets to know information that identifies them. *Greenley v. Kochava, Inc.* 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (Article III standing alleged where third party collected "geolocation … personal choices, [and] app selections," among other information).

In short, Plaintiffs' "inability to control or prevent the unauthorized exploration of his private affairs is the root of the alleged injury." *Greenley*, 684 F. Supp. 3d at 1037 (citing *In re Facebook*, 956 F.3d at 599). Applying that rationale here, Plaintiffs allege that Defendant intercepted Plaintiffs' communications with Defendant's Website and App without consent. FAC ¶ 51. And Plaintiffs allege that Defendant profited from the scheme by utilizing the intercepted communications to "supply advertising services." *Id.* ¶ 165. Such conduct suffices for jurisdictional standing and statutory standing under the CIPA. *See, e.g.*, *In re Facebook*, *supra*, 956 F.3d at 599 ("Facebook's user profiles would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives.").

Second, for the reasons described above, Plaintiffs have alleged the "contents" of their communications were intercepted. *See* Argument § IV.B, *supra*.

Third, courts have consistently held that Clauses Two, Three, and Four of CIPA § 631(a) apply to internet communications, including communications intercepted with the same technology at issue here. *See, e.g.*, *Call-On Doc, Inc.*, 2025 WL 1677632 at *11-14 (finding Clause One of CIPA § 631(a) only applies to telephones but denying a motion to dismiss for a violation of Clause Four when the Defendant installed Google Analytics on its website); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *5-9 (N.D. Cal. Oct. 1, 2024) (denying a motion to dismiss CIPA §631(a) claim when the defendant installed the Meta Pixel onto its website). Defendant is liable under Clause Four of CIPA for aiding the Third Parties in violating Clauses Two and Three.

Fourth, Plaintiffs have alleged their communications were confidential under CIPA § 632. As discussed above, the information intercepted by the Third Parties is "nonpublic personal information," as defined by Congress in the GLBA. FAC ¶ 5. Further, the information was intercepted after Plaintiffs logged into their password protected accounts, demonstrating that the information is confidential.[8]

## VIII.  PLAINTIFFS STATE A CALIFORNIA INVASION OF PRIVACY CLAIM

Finally, Defendant argues "Plaintiffs Fail to State a Claim for Invasion of Privacy/Intrusion Upon Seclusion." MTD at 23. This is wrong

To state a claim for invasion of privacy, Plaintiffs must allege: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. Plaintiffs have done so.

First, Plaintiffs specifically plead a legally protected privacy interest, namely, a privacy interest in their private financial data. FAC ¶ 5. This is bolstered by the fact that Defendant

---

[8] To the extent the Court sustains Plaintiffs' CIPA or WESCA claims, Plaintiffs concede their claims for equitable relief.

installed the trackers inside the personal account areas of the Website and App, which can only be accessed by creating an account and entering a password. There is no doubt that these protections, which function essentially as a promise by Defendant that the information is secure, create a reasonable expectation of privacy.

Nor can Defendant claim the intrusion was not highly offensive. Again, the transaction information intercepted by Defendant was communicated by Plaintiffs in areas of the Website and App that are password protected and otherwise explicitly described by Defendant as secure. Nonetheless, to the extent the Court disagrees with Plaintiffs, "determinations of the egregiousness of the privacy intrusion are not usually resolved at the pleading stage." *Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. Apr. 6, 2023); *see also In re Facebook*, 956 F.3d at 606 (egregiousness "is an issue that cannot be resolved at the pleading stage."); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025) ("[I]t is premature to dismiss Gabrielli's claims based on a determination of how offensive or serious the privacy intrusion is."); *In re Facebook, Inc., Cons. Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is.").

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied. Alternatively, if the Motion is granted in any respect, Plaintiff respectfully requests leave to amend. *Forman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires; this mandate is to be heeded.'").

Dated: September 12, 2025                                      Respectfully submitted,

                                                                              By:  /s/    Mark C. Atlee
                                                                                      Mark C. Atlee

21

**ATLEE HALL, LLP**
Mark C. Atlee (PA No. 204627)
415 North Duke Street
Lancaster, PA 17602
Telephone: (717) 393-9596
Facsimile:  (717) 393-2138
E-mail: mcatlee@atleehall.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie (*pro hac vice* application
forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: aleslie@bursor.com

*Attorneys for Plaintiffs and the Putative
Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I caused true and correct copies of the foregoing document to be served via electronic filing upon all counsel of record via the ECF system.

Dated:  September 12, 2025                    Respectfully submitted,

By:  _/s/     Mark C. Atlee_____
                    Mark C. Atlee