**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN FELSEN, MATTHEW RAGUSANO, AND NAMBARAMEY DY,<br><br>Plaintiffs,<br><br>v.<br><br>THE VANGUARD GROUP, INC.,<br><br>Defendant. | Case No. 2:25-cv-02359-JFM |

**REPLY IN SUPPORT OF DEFENDANT'S**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

I. Plaintiffs Lack Standing. 1

II. Plaintiffs Fail to Plead That Vanguard Intercepted the "Contents" of Their Communications, or Other Details Sufficient to Support Their Claims. 3

III. Plaintiffs Have Not Shown That the ECPA's Crime-Tort Exception Applies. 4

IV. Pennsylvania Law Governs This Dispute. 7

V. Additional Deficiencies Doom Plaintiffs' CIPA Claims. 9

VI. Plaintiffs Do Not Plausibly Plead a Claim for Invasion of Privacy/Intrusion Upon Seclusion. 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. Quicken Loans Inc.*,
No. 17-cv-12352, 2018 WL 5874088 (D.N.J. Nov. 9, 2018) ....5, 6

*Caraffa v. TD Bank, N.A.*,
No. 24-cv-2214, 2025 WL 2319668 (E.D. Pa. Aug. 12, 2025) ....7

*Delong v. PHE, Inc.*,
No. CV 24-5212, 2025 WL 2447787 (E.D. Pa. Aug. 25, 2025) ....2

*Doe v. Call-On Doc, Inc.*,
No. 24-cv-2095, 2025 WL 1677632 (S.D. Cal. June 13, 2025) ....2, 3, 7

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ....7

*Hammerling v. Google LLC*,
No. 21-cv-09004, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022),
*aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ....8

*Hogan v. Amazon.com, Inc.*,
No. 21 C 3169, 2022 WL 952763 (N.D. Ill. Mar. 30, 2022) ....7

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....6, 7

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....1

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
934 F.3d 316 (3d Cir. 2019) ....1

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) ....5

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ....4

*James v. Glob. TelLink Corp*,
852 F.3d 262 (3d Cir. 2017) ....8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ....................9

*Kreider v. Green Robin Homes, LLC*,
No. 24-cv-4288, 2025 WL 1582461 (E.D. Pa. June 4, 2025)....................8

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................4, 5

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-cv-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)....................9

*Murphy v. Thomas Jefferson Univ. Hospitals, Inc.*,
No. 22-cv-4674, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024)....................3

*Patterson v. Respondus, Inc.*,
593 F. Supp. 3d 783 (N.D. Ill. 2022) ....................7

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ....................1, 2

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................4

*Rodriguez v. Google LLC*,
No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021)....................6

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....................4, 7, 10

*Smith v. YETI Coolers, LLC*,
No. 24-cv-01703, 2025 WL 877127 (N.D. Cal. Mar. 14, 2025) ....................10

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................6

**STATUTES**

Cal. Penal Code § 631(a) ....................9

Cal. Penal Code § 632....................9

Plaintiffs' Opposition does not adequately address the factual and legal deficiencies identified in Vanguard's Motion to Dismiss the First Amended Complaint ("FAC"). All of Plaintiffs' claims are subject to dismissal based on Plaintiffs' lack of standing, and each claim suffers from additional legal defects independently requiring dismissal. Plaintiffs' FAC should be dismissed in its entirety for the reasons set forth in Vanguard's Motion and below.

## I. Plaintiffs Lack Standing.

Plaintiffs' arguments that they alleged facts sufficient to confer standing fail. In their Opposition, Plaintiffs argue that they sufficiently allege a concrete injury that is traditionally recognized as actionable at common law. In support of this argument, Plaintiffs rely on two cases: *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316 (3d Cir. 2019) and *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). Both cases are distinguishable. In *Google*, the plaintiffs alleged that Google's tracking technologies operated even if they configured specific privacy settings to prevent tracking, and the Third Circuit found the plaintiffs alleged concrete injury because Google tracked their browsing information despite promises not to do so. 934 F.3d at 320–321, 325. In *Facebook*, the court found the plaintiffs "sufficiently alleged a clear invasion of the historically recognized right to privacy" based on allegations that Facebook continued to collect the plaintiffs' data after they had logged out of the platform. 956 F.3d at 598–599.

Plaintiffs fail to allege that a similar invasion of privacy occurred here. Plaintiffs argue that Vanguard promised not to track user information, citing their allegation that Vanguard represented that "[t]his application is secure." Opp. at 6 (citing FAC ¶ 2). A representation that a website is secure is not the same as a promise to not track user information. Moreover, Vanguard's Privacy Notice informs users that it employs tracking technologies. *See* Mot. at 3–4; *see also Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *5 (9th Cir. Aug. 26, 2025) (alleged harm

from website tracking not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law"). In short, Plaintiffs do not "point to any specific promise by [Vanguard], akin to those made in *Google* and *Nickelodeon*, to abstain from online tracking or data collection." *Delong v. PHE, Inc.*, No. CV 24-5212, 2025 WL 2447787, at *6 (E.D. Pa. Aug. 25, 2025) (Murphy, J.).

Plaintiffs' argument that they sufficiently alleged that sensitive financial information was improperly disclosed also fails. Plaintiffs allege that they "regularly log[] into [their Vanguard] account and search[] for and purchase investments." Opp. at 5 (citing FAC ¶¶ 6–8). Plaintiffs also make a broad allegation that Vanguard disclosed "communications that contain sensitive and confidential information." *Id.* at 6 (citing FAC ¶ 5). But these generalized allegations are not supported by any facts and thus are insufficient to confer standing. *See* Mot. at 5–8.

Plaintiffs misstate holdings to support their arguments. For instance, Plaintiffs cite *Doe v. Call-On Doc, Inc.*, No. 24-cv-2095, 2025 WL 1677632 (S.D. Cal. June 13, 2025), for the proposition that the court found standing "where the complaint contained a description of the way Google Analytics operated on the defendant's website and then alleged that the plaintiff took the actions generally described earlier in the complaint." Opp. at 9. However, the court in *Call-On Doc* found that plaintiff had standing because she alleged that the defendant intercepted personal health information including her "full name, gender, height, weight, symptoms, dates of exposure for certain contagious diseases and sexually transmitted infections, pregnancy status, breastfeeding status, medications, and surgical history." 2025 WL 1677632, at *4. Here, Plaintiffs have not alleged any details about allegedly confidential information of theirs that was intercepted, and Plaintiffs' vague allegations are simply insufficient to confer standing. *See* Mot. at 8 (citing cases).

## II. Plaintiffs Fail to Plead That Vanguard Intercepted the "Contents" of Their Communications, or Other Details Sufficient to Support Their Claims.

In response to Vanguard's argument that the FAC lacks sufficient factual detail about Plaintiffs' own experiences to withstand a motion to dismiss, Plaintiffs argue that the FAC describes in detail the "information input into the Defendant's Website and App," including "specific searches" and "financial products purchased." Opp. at 8 (citing FAC ¶¶ 27–92). But the FAC plainly does not include *any* detail about Plaintiffs' own "information input into the Defendant's Website and App," "specific searches," or "financial products purchased." *See* FAC ¶¶ 27–92 (containing no details about the specific information of Plaintiffs that was allegedly intercepted). The most detail the FAC provides is that Plaintiffs allegedly "searche[d] for and purchase[d] investments" as recently as "April 2025" and "June 2025." *Id.* ¶¶ 6–8.

The cases Plaintiffs cite only underscore the flaws in Plaintiffs' pleading. *See Murphy v. Thomas Jefferson Univ. Hospitals, Inc.*, No. 22-cv-4674, 2024 WL 4350328, at *4 (E.D. Pa. Sept. 30, 2024) (sustaining wiretapping claim where plaintiff alleged interception of communications related to "specific healthcare providers, conditions, treatments, diagnoses, prognoses, prescription drugs, symptoms, insurance, and payment information, as well as messages exchanged in patient portals"); *Call-On-Doc*, 2025 WL 1677632, at *3–4 (sustaining wiretapping claims where plaintiff sought treatment for "upper respiratory infection" on website and "answered a series of questions related to her physical health," then received targeted ads for pneumonia treatments). Indeed, the FAC's allegations place Plaintiffs in the company of other plaintiffs whose vague and hypothetical allegations were deemed insufficient to state a claim. *See* Mot. at 9–11.

This failure is fatal to all of Plaintiffs' claims, and in particular the requirement that Plaintiffs adequately allege the interception of "contents" of their communications under the ECPA, WESCA, and CIPA. Plaintiffs claim that the "contents" of their communications were

intercepted because "detailed URLs" were intercepted, but the FAC contains no details about what information in Plaintiffs' URLs was captured. Opp. at 15. Plaintiffs rely on cases involving pleadings that—unlike the FAC—described in detail sensitive information that was captured in URLs. *See, e.g.*, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (involving allegations that URLs captured search queries for specific sensitive health products); *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 939 (N.D. Cal. 2022) (involving allegations that URLs captured "highly detailed personal profile information about peoples' interests, race, religion, sexual orientation, and health status"). Plaintiffs' allegations that they "regularly log into [their accounts] and search[] for and purchase[] investments," and their general assertions about the types of information that Meta, LinkedIn and Google may collect from a hypothetical user, are insufficient to support their wiretapping claims.[1] *See* Opp. at 14–15; *see also* Mot. at 14–18.

## III. Plaintiffs Have Not Shown That the ECPA's Crime-Tort Exception Applies.

Plaintiffs concede that without the crime-tort exception, their ECPA claim fails as a matter of law, because absent that exception, only one party needs to consent. Opp. at 11. Plaintiffs cite non-binding, out-of-circuit cases for the proposition that the alleged crime or tort need not be independent of the alleged interception. Opp. at 12–14.[2] In doing so, Plaintiffs disregard the Third

---

[1] Plaintiff Dy's WESCA claim also fails because he consented to any alleged tracking through his use of the website, which links to Vanguard's Privacy Notice at the bottom of every page. *See* Mot. at 17–18. Tellingly, Plaintiffs do not deny that Vanguard's Privacy Policy disclosed that Vanguard collects and may share data regarding targeted advertising.

[2] *See, e.g.*, *Shah v. Capital One Fin. Corp*., 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (finding allegations that interception was tortious sufficient to invoke crime-tort exception, rather than requiring that the alleged tort be independent of the interception). Other courts have declined to follow Plaintiffs' cited authorities because of factual differences inherent in cases alleging HIPAA violations. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (citing *Castillo v. Costco Wholesale Corp.* and *R.C. v. Walgreen Co.*, among others, and stating, "Plaintiffs cite to several out of district cases to argue that crime-tort exception applies even when Defendant's primary motivation was economic benefit . . . The Court does not find these cases to be persuasive

Circuit's holding that the crime-tort exception requires plaintiffs to "plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (3d Cir. 2015); *see also Allen v. Quicken Loans Inc.*, No. 17-cv-12352, 2018 WL 5874088, at *5 (D.N.J. Nov. 9, 2018) ("Thus, the plaintiff must plead that the defendant intercepted the communications 'for the purpose of facilitating some further impropriety, such as blackmail,' not merely that the interception itself (or the means of interception) is tortious or criminal." (citation omitted)).

According to Plaintiffs' allegations, any alleged crime or tort would have occurred during the act of interception by the "Third Parties" using the tracking technologies. *See, e.g.*, FAC ¶ 5 ("Defendant disclosed and assisted the Third Parties in intentionally intercepting confidential information from Defendant's Website and App for target[ed] advertising purposes and to increase their own revenue."); *id.* ¶ 133 ("Defendant intercepted—in real time—Plaintiffs' and Class members' electronic communications via the tracking technology provided by Google on its Website, which tracked, stored and unlawfully disclosed Plaintiff's and Class Members' PII to Third Parties."). Plaintiffs' arguments "plainly fail because the alleged tortious or criminal activities are not independent from the intentional act of intercepting; they are the interception itself." *Allen*, 2018 WL 5874088, at *6. Plaintiffs' vague claim that "additional privacy violations" occurred later when Third Parties used Plaintiffs' information for purposes of targeted advertising, Opp. at 12, does little to help their ECPA claim.[3]

---

as every case cited by Plaintiffs relates to violations of [HIPAA] by healthcare companies—not a violation of VPPA.").

[3] Plaintiffs' reliance on conclusory allegations of violations of the Gramm-Leach Bliley Act ("GLBA") (Opp. at 14) is equally flawed, and courts in this Circuit have declined to apply the

Moreover, Plaintiffs' own allegations make clear that Vanguard's "primary motivation" was not to commit a crime or tort. Instead, Plaintiffs repeatedly state that Vanguard's alleged interception was "for target[ed] advertising purposes." FAC ¶ 5; *see also, e.g.*, *id.* ¶ 80 ("Defendant employed the services of the Third Parties and their tracking technologies on each page of its Website and App to track its users' investment activities and send this information to the Third Parties so the Third Parties could analyze the information and target users with advertising based on those activities."); *id.* ¶ 97 ("Defendant's disclosure of consumer information is done for the purpose of improperly increasing its own advertising efficiency, as well as LinkedIn's."). Indeed, the FAC contains a 15-paragraph section titled "Defendant Intercepted and Disclosed Plaintiffs' Protected Electronic Communications for Marketing, Advertising and Analytics Purposes." *Id.* ¶¶ 93–107. Where, as here, it is clear from the complaint that a defendant's primary purpose was for marketing rather than to commit a tort or crime, courts have held that the crime-tort exception to the ECPA is inapplicable. *See, e.g.*, *Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (finding crime-tort exception inapplicable where Google's alleged interceptions were financially motivated); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) (dismissing Plaintiff's ECPA claim where defendant's purpose was "to make money by providing a valued service to

---

crime-tort exception in wiretapping cases with similar allegations. *See Allen*, 2018 WL 5874088, at *6 (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1203 (9th Cir. 1999) ("Allen argues that a mere alleged violation of the GLBA gives rise to liability under Section 2511(2)(d). But this ignores the plain language of the statute and this Circuit's precedent; the question is not whether Defendants' interception violated the GLBA, but 'whether the *purpose* for the interception—its intended use—was' to facilitate an independent criminal activity.").

commercial Web sites"). Based on Plaintiffs' own allegations, the crime-tort exception does not apply here and their ECPA claim must be dismissed. [4]

## IV. Pennsylvania Law Governs This Dispute.

Plaintiffs attempt to circumvent their choice of Pennsylvania law by relying exclusively on cases brought under the Illinois Biometric Information Privacy Act ("BIPA"): *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016), *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783 (N.D. Ill. 2022), and *Hogan v. Amazon.com, Inc.*, No. 21 C 3169, 2022 WL 952763 (N.D. Ill. Mar. 30, 2022). These cases have no bearing on the choice of law analysis here.

Unlike CIPA and WESCA, which are fundamentally equivalent wiretapping statutes that are derivative of the ECPA, California and Washington do not have biometric privacy statutes that are analogous to BIPA.[5] Therefore, if California or Washington law governed, "the Illinois policy of protecting its citizens' privacy interests in their biometric data . . . would be written out of existence." *In re Facebook*, 185 F. Supp. 3d at 1169. This simply would not be the case here, where CIPA and WESCA share similar standards and remedies and are just two of many similar state wiretapping laws modeled on the ECPA.

---

[4] Plaintiffs cite several cases they claim hold that the same "technology" that Vanguard allegedly uses on its website violates the ECPA. None of the cited cases does so. *See Caraffa v. TD Bank, N.A.*, No. 24-cv-2214, 2025 WL 2319668 (E.D. Pa. Aug. 12, 2025) (in one-paragraph footnote order without detailed reasoning, denying motion to dismiss wiretap claims); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025) (granting in part and denying in part motion for class certification); *Doe v. Call-On Doc, Inc.*, 2025 WL 1677632 (S.D. Cal. June 13, 2025) (granting in part and denying in part motion to dismiss with leave to amend); *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) (same).

[5] Although Washington does have a biometric privacy law, unlike CIPA and WESCA, it does not have a private right of action and can only be enforced by the state attorney general. *See Hogan*, 2022 WL 952763, at *3.

Courts have held that there is no actual conflict between CIPA and other similar state wiretapping laws. *See* Mot. at 18–20. This is because the "location of interception" requirement is not unique to WESCA—other state wiretapping statutes, including CIPA, have this same requirement. *See Hammerling v. Google LLC*, No. 21-cv-09004, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022), *aff'd*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ("Plaintiffs fail to allege that the data in question was intercepted in California, as is required under the CIPA."). The requirement for the allegedly wrongful act to take place in the forum state is not a "violation of fundamental policy," but rather, a basic jurisdictional tenet shared by CIPA and WESCA. Indeed, Plaintiffs identify no authority where WESCA's "intercepted in Pennsylvania" requirement forecloses the application of a choice of law clause.[6]

Plaintiffs' reliance on *Kreider v. Green Robin Homes, LLC*, No. 24-cv-4288, 2025 WL 1582461 (E.D. Pa. June 4, 2025), is similarly misplaced. There, the defendants did not contend that the choice of law clause was controlling, and they were not even direct parties to the agreement containing the clause. *See id.* at *14. Here, for the reasons discussed above and in Vanguard's Motion, Plaintiffs assented to the Terms of Use, and the choice of law provision contained therein is controlling.[7]

---

[6] Plaintiffs argue that if the choice of law clause is enforced, Plaintiffs Felsen and Ragusano must be allowed to bring WESCA claims. *See* Opp. at 16. But the FAC explicitly brings WESCA claims on behalf of ***only*** Plaintiff Dy and the Pennsylvania Subclass, despite acknowledging the Pennsylvania choice of law provision in the FAC. *See* FAC ¶¶ 12, 144–155.

[7] Despite citing the choice of law provision in their FAC, Plaintiffs now claim that they did not consent to Vanguard's Terms of Use because it is a "browsewrap," citing only Ninth Circuit caselaw in support. Opp. at 10; 16, n.5. But even if Plaintiffs are correct that the Terms are a "browsewrap," the Third Circuit has held that "where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements." *James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017) (quotation omitted). Every page on Vanguard's website provides such a notice. *See* Mot. at 17, 19.

## V. Additional Deficiencies Doom Plaintiffs' CIPA Claims.

Plaintiffs fail to state a CIPA claim for several additional reasons. ***First*,** in addition to lacking Article III standing, Plaintiffs also lack statutory standing under CIPA. *See* Mot. at 21–22. Regarding CIPA, Plaintiffs argue that there is a "catch-all" right to statutory standing wherever there is an alleged violation of a privacy statute. *See* Opp. at 18. Not so. As explained in *Jones v. Ford Motor Co*., 85 F.4th 570, 575 (9th Cir. 2023), "an invasion of privacy, without more, is insufficient to meet the statutory injury requirements." This is true for CIPA. *See* Mot. at 21–22; *see also Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-01797, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024) (citation omitted) ("a plaintiff must 'allege a concrete injury-in-fact' to establish statutory standing under CIPA"). ***Second*,** as argued, Plaintiffs fail to plausibly allege that the purportedly intercepted information constituted "contents of a communication" under CIPA. ***Third***, Plaintiffs concede that it is correct that Clause One of CIPA § 631(a) does not apply to the internet. *See* Mot. at 8; Opp. at 20. Vanguard's argument on this issue was limited to Clause One (covering intentional wiretapping), and Plaintiffs agree that they cannot premise their CIPA Clause Four claims on a purported Clause One violation by a third party. ***Fourth***, Plaintiffs fail to plead sufficient detail to establish that their communications were "confidential" for purposes of CIPA § 632. Rather than disputing the pleading defect, Plaintiffs again resort to citing the boilerplate allusions to statutory violations made in paragraph 5 of the FAC. This does not meet the threshold required to plead that a communication was "confidential." *See* Mot. at 22–23.

## VI. Plaintiffs Do Not Plausibly Plead a Claim for Invasion of Privacy/Intrusion Upon Seclusion.

The FAC does not state a claim for invasion of privacy/intrusion upon seclusion for two independent reasons. ***First***, Plaintiffs fail to plead enough detail to establish a reasonable expectation of privacy. ***Second***, the FAC does not plead a "highly offensive" intrusion. Plaintiffs'

half-hearted attempts to support this claim fail. Plaintiffs point to paragraph 5 of the FAC as evidence that they have "specifically pled" a reasonable expectation of privacy. Opp. at 20. But paragraph 5 contains only conclusory allegations of a "reasonable expectation of privacy" based on generalized references to "nonpublic personal information" under the GLBA and CalFIPA—it offers no detail into the actual information at issue. *See* FAC ¶ 5.

Plaintiffs then argue that the alleged intrusion was "offensive" because it purportedly occurred in password-protected areas of the website that should have been secure. Opp. at 21. Plaintiffs offer no authority in support of this argument, nor do they attempt to rebut the Motion's caselaw demonstrating that even far more sensitive information, such as bank account information, social security numbers, and geolocation information are not "highly offensive" intrusions. *See* Mot. at 24–25. Plaintiffs similarly do not contest Vanguard's argument that all alleged data collection and disclosure at issue is routine commercial behavior, meaning that it cannot be "highly offensive" as a matter of law. *Id.* at 25.

Recognizing their failure to plead a highly offensive intrusion, Plaintiffs argue that "offensiveness" is not ripe for decision at the pleadings stage. But "offensiveness" is an element of their claim and is routinely decided at the pleading stage. *See, e.g.*, *Shah*, 768 F. Supp. 3d at 1047 (granting motion to dismiss on invasion of privacy because "Plaintiffs here do not allege an intrusion that is highly offensive as a matter of public policy"); *see also Smith v. YETI Coolers, LLC*, No. 24-cv-01703, 2025 WL 877127, at *2 (N.D. Cal. Mar. 14, 2025) (granting motion to dismiss where plaintiff had not sufficiently alleged that "Defendant's conduct was so egregious as to constitute a 'serious invasion of privacy.'"). Just as in *Shah* and *Smith*, Plaintiffs do not come close to alleging a "highly offensive" intrusion, and their invasion of privacy/intrusion upon seclusion claims should similarly be dismissed.

Dated: October 3, 2025

Respectfully submitted,

<u>*/s/ Kristin M. Hadgis*</u>

MORGAN, LEWIS & BOCKIUS LLP
Ezra D. Church
Kristin M. Hadgis
Terese M. Schireson
2222 Market Street
Philadelphia, PA 19103-3007
Tel: 215.963.5000
ezra.church@morganlewis.com
kristin.hadgis@morganlewis.com
terese.schireson@morganlewis.com

Megan A. Suehiro (*pro hac vice* forthcoming)
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: 213.612.2500
megan.suehiro@morganlewis.com

*Attorneys for The Vanguard Group, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused true and correct copies of the foregoing document to be served via electronic filing upon all counsel of record via the ECF system.

DATED: October 3, 2025

*/s/ Kristin M. Hadgis*
Kristin M. Hadgis