**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN FELSEN, MATTHEW RAGUSANO, AND NAMBARAMEY DY,<br><br>Plaintiffs,<br><br>v.<br><br>THE VANGUARD GROUP, INC.,<br><br>Defendant. | Case No. 2:25-cv-02359-JFM |

**THE VANGUARD GROUP, INC.'S RESPONSE RE: PLAINTIFFS' SUPPLEMENTAL**
**<u>BRIEF PURSUANT TO THE COURT'S OCTOBER 15, 2025 ORDER</u>**

On October 15, 2025, the Court ordered Plaintiffs to file a supplemental brief addressing standing under *Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025). Dkt. 21. In *Cook*, the Third Circuit Court of Appeals affirmed the dismissal of Cook's WESCA and intrusion upon seclusion claims for failure to allege a concrete injury sufficient to confer Article III standing. *Cook*, 148 F. 4th at 163. Cook had alleged that GameStop intercepted her mouse movements, clicks, keystrokes, search terms, and URLs through its use of session replay technology. *Id.* at 159. The Third Circuit analyzed whether Cook's alleged harm was analogous to the traditional privacy torts of disclosure of private information and intrusion upon seclusion, holding that Cook had not alleged interception of sensitive or personal information and the alleged harm was not the kind of harm caused by disclosure of private information or intrusion upon seclusion. *Id.* The Third Circuit also stressed that a statutory violation alone does not establish standing without a concrete harm. *Id.* at 159–60.

The Court should dismiss Plaintiffs' Amended Complaint for the same reasons. Plaintiffs here have not alleged any specific information of theirs that was purportedly intercepted, let alone shown that such information was sufficiently sensitive or personal to give rise to a concrete injury. Likewise, Plaintiffs have not alleged that Vanguard accessed their data through intrusive or offensive means. Plaintiffs' asserted injuries are merely boilerplate statutory violations that, without more, are insufficient to establish standing. *Id.* at 158. For the reasons discussed below, Plaintiffs' attempts to distinguish *Cook* fail. *Cook* supports dismissal of all of Plaintiffs' claims.

## I. PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE THEIR EXPERIENCES ON VANGUARD'S WEBSITE TO DISTINGUISH IT FROM THE BROWSING ACTIVITY IN *COOK*.

Plaintiffs attempt to distinguish *Cook* by arguing that *Cook* concerned general and anonymized browsing activity while Plaintiffs' allegations describe "how Plaintiffs were identified" by third parties. Supp. Brief at 1–2.

Despite their claims to the contrary, Plaintiffs fail to allege any details related to their own experiences on Vanguard's website. In support of their contention that "the FAC describes how Plaintiffs were identified by the third parties," Plaintiffs cite to several paragraphs of the FAC. Supp. Brief at 2 (citing FAC ¶¶ 48–49, 64, 73–74). But these paragraphs make no allegations regarding Plaintiffs' own experiences using Vanguard's website and instead describe the tracking technologies of LinkedIn, Google, and Facebook in general terms. The FAC is devoid of any allegations describing how Plaintiffs themselves were identified by third parties.

Nevertheless, even if Plaintiffs sufficiently alleged that they were identified by third parties, that is insufficient to allege a concrete injury because, like the plaintiff in *Cook*, Plaintiffs fail to allege what information was intercepted, that the information was highly sensitive, or that there was any intrusion into their private affairs. *See* Dkt. 12 at 6–8. Moreover, courts routinely find lack of standing even where plaintiffs alleged their identities were known at the time of the alleged tracking. *See, e.g.*, *In re BPS Direct, LLC,* 705 F. Supp. 3d 333, 343, 347 (E.D. Pa. 2023) (dismissing for lack of standing where plaintiffs alleged they provided their names and billing information, among other information); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022) (dismissing for lack of standing where plaintiffs had alleged disclosure of information including their names and email addresses).

## II. PLAINTIFFS FAIL TO ALLEGE WHAT INFORMATION WAS INTERCEPTED, AND THE INFORMATION IS NOT "HIGHLY SENSITIVE" IN ANY EVENT.

Plaintiffs claim that "[t]he allegations in the FAC concern significantly more invasive conduct" than the issues presented in *Cook*. Supp. Brief at 3. This argument misses the mark for at least two independent reasons.

***First*****,** Plaintiffs fail to properly allege what information of theirs is even at issue. Instead, they rely on vague allusions to what could happen to a ***hypothetical user's*** "investment trades and

purchases." *Id.* (citing FAC ¶ 87) ("When ***a user*** logs in to their account and selects investments" Google and LinkedIn "intercept each stage of ***a user's*** selection of Domestic Stock for investment, the ticker name, and the action the user is taking with this investment") (emphasis added). The plaintiff in *Cook* did not have standing, but she at least managed to plead what actually happened ***to her*** on the GameStop website. *See Cook*, 148 F.4th at 159. The FAC fails to include even these basic threshold allegations. Because Plaintiffs have left the Court in the dark as to what the alleged "intrusion of [their] solitude or seclusion as to [their] person or private affairs" actually is, *id.* at 160, the "sensitivity" inquiry here is little more than a guessing game.

***Second,*** even if Plaintiffs had properly pled what information of theirs is at issue (they did not), such information is not "personal or sensitive." Plaintiffs tellingly cite no law in support of their proposition that an alleged interception occurring in "password-protected" areas of the website automatically converts the intrusion into a "personal or sensitive" one. Indeed, courts have dismissed similar claims where users were logged into password-protected accounts. *See, e.g.*, *Stevens v. TD Bank, N.A.*, Civil No. 24-8311 (RMB/AMD), 2025 WL 1779164, at *2 (D.N.J. June 27, 2025) (dismissing wiretapping claims despite allegation that the plaintiff "accessed his TD account through the bank's website"). Plaintiffs also offer no explanation as to how information about "trades and purchases" is "highly sensitive." *Compare* FAC ¶ 110 ("Defendant disclosed Plaintiffs' and Class Members' highly sensitive financial information, including their trades and purchases of financial products.") with *Delong v. PHE, Inc.*, Civil Action No. 24-5212, 2025 WL 2447787, at *5 (E.D. Pa. Aug. 25, 2025) (Murphy, J.) (plaintiff's "sexual interests, activity, and history" constitutes a plausible "alleg[ation] that the collected information is sensitive" due to the associated possibility of embarrassment).

## III. VANGUARD DID NOT CONTRADICT ITS REPRESENTATIONS ABOUT USER PRIVACY.

Next, Plaintiffs argue that Vanguard tracked their personal information in violation of a promise not to do so. The "promise" Plaintiffs refer to is Vanguard's statement that "[t]his application is secure." Supp. Brief at 3. As set forth in Vanguard's Motion, a representation that a website is secure is not the same as a promise not to track user information. Dkt. 20 at 1. In *Cook*, the plaintiff relied on two cases in attempting to make the same argument Plaintiffs make here: *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016), and *In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019). In *Nickelodeon*, Nick.com included a message at registration that stated "HEY GROWN-UPS: We don't collect ANY personal information about your kids. Which means we couldn't share it even if we wanted to!" 827 F.3d at 269. The plaintiff alleged that, despite this clear assurance, Nick.com collected information. *Id.* In *Google*, the plaintiffs alleged that Google bypassed users' browser privacy settings to track their internet activity, despite assurances that it would not do so. 934 F.3d at 321.

The Third Circuit in *Cook* held that *Nickelodeon* and *Google* were not controlling because, unlike in those cases, GameStop "made no promise to refrain from collecting information." *Cook*, 148 F.4th at 162. Likewise, here, Plaintiffs point to no statements of Vanguard in which it promised not to track internet activity; to the contrary, Vanguard's website Privacy Notice informs users that it employs tracking technologies.[1] *See* Dkt. 13 at 3–4; Dkt. 20 at 1. Here, just like in *Cook*, "[Plaintiffs'] allegations are materially different" because "[Vanguard] made no promise to refrain from collecting information." 148 F.4th at 162.

---

[1] Plaintiffs' arguments related to alleged contradictions made by LinkedIn (Supp. Brief at 3–4) lack merit, as Plaintiff has not sued LinkedIn in this action and alleged statements on LinkedIn's website are not binding on Vanguard.

## IV. PLAINTIFFS' CLAIMS ARE NOT SIMILAR TO COMMON LAW INTRUSION UPON SECLUSION.

Plaintiffs claim that their allegations "bear a close relationship to the common law tort of intrusion upon seclusion" that is "[c]onsistent with Third Circuit precedent," yet they fail to cite any cases in support of that proposition. *See* Supp. Brief at 4. Instead, they once again resort to arguing that they should automatically be conferred standing because their Vanguard accounts were "password protected." *Id.* at 4–5. They also include vague references to the GLBA and CalFIPA. *Id.* at 5. These arguments are flawed and devoid of any legal support.

*Cook* correctly held that "[t]he harm caused by intrusion upon seclusion necessarily accompanies an intrusion into a person's solitude or private affairs" and that "[a]bsent that type of intrusion, the harm . . . is not similar." *Cook*, 148 F.4th at 161. Plaintiffs acknowledge that "routine internet browsing" is not similar to the harm contemplated by common law intrusion upon seclusion. *See* Supp. Brief at 4; *Cook*, 148 F.4th at 162; *Delong*, 2025 WL 2447787, at *6 (no standing where "routine collection and disclosure" of information was not analogous to common law intrusion upon seclusion).

Plaintiffs first attempt to distinguish their claims by arguing that tracking occurred within password-protected accounts. But as explained in Section II *supra*, they identify no authority where that fact was dispositive or had any meaningful impact on the standing inquiry. Further, as explained in Section III *supra*, Vanguard made no promises not to deploy tracking technologies. "Internet users typically understand and implicitly accept that their IP addresses and online shopping activities are routinely shared with website operators and third parties during normal browsing." *Delong*, 2025 WL 2447787, at *6. This typical understanding does not suddenly change when a user logs into their account on a website. Nor did Vanguard make any promises that would alter that expectation. Therefore, the fact that tracking of Plaintiffs' "trades and

purchases of financial products" allegedly occurred while Plaintiffs were signed into Vanguard accounts does not convert the injury into one that is similar to common law intrusion upon seclusion. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (tracking of website interactions is not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law"); FAC ¶ 110.

Plaintiffs' generalized references to the GLBA and CalFIPA fare no better. They state only that "the information at issue is subject to protection" by those statutes but fail to identify what information at issue is allegedly protected. Supp. Brief at 5. Mere recitations of these statutes, without more, cannot convert the claimed injury (routine internet tracking) into one that is similar to common law intrusion upon seclusion. *See Santoro v. Tower Health*, Civil Action No. 22-4580, 2024 WL 1773371, at *5 (E.D. Pa. Apr. 24, 2024) (Murphy, J.) (rejecting argument that the "specifics were immaterial because essentially any use of the website necessarily involves the Meta Pixel intercepting and transmitting HIPAA-protected health information."). At bottom, Plaintiffs are attempting to assert standing based on little more than conclusory allegations of statutory violations. However, Plaintiffs "must allege more than merely abstract injuries stemming solely from statutory breaches." *Delong*, 2025 WL 2447787, at *4; *see also Cook*, 148 F.4th at 158 ("An alleged statutory violation is not necessarily an injury in fact; 'a concrete injury' is still required"); *Popa*, 153 F.4th at 793 (Article III "requires a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury").

For all of these reasons, Plaintiffs have failed to allege a concrete injury sufficient to confer Article III standing, and the Amended Complaint should be dismissed, consistent with *Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025).

Dated: October 29, 2025

Respectfully submitted,

*<u>/s/ Kristin M. Hadgis</u>*
MORGAN, LEWIS & BOCKIUS LLP
Ezra D. Church
Kristin M. Hadgis
Terese M. Schireson
2222 Market Street
Philadelphia, PA 19103-3007
Tel: 215.963.5000
ezra.church@morganlewis.com
kristin.hadgis@morganlewis.com
terese.schireson@morganlewis.com

Megan A. Suehiro (*pro hac vice* forthcoming)
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: 213.612.2500
megan.suehiro@morganlewis.com

*Attorneys for The Vanguard Group, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused true and correct copies of the foregoing document to be served via electronic filing upon all counsel of record via the ECF system.

DATED: October 29, 2025

*/s/ Kristin M. Hadgis*
Kristin M. Hadgis